POTTSVILLE IRON & STEEL CO. v. ASCHERSON et al.

(Circuit Court of Appeals, Third Circuit.    November 3, 1893.)

No. 18.

SALE BASED ON OCEAN FREIGHT RATE—CONSTRUCTION OF CONTRACT—DISPATCH MONEY.

In a sale of ores to be imported by the seller, a stipulation that the price is based on a specified ocean freight, buyers to receive or pay the

difference between that and the rate named in the "bill of lading," does not entitle the buyers to receive dispatch money earned under charter parties, although each bill of lading, after specifying the freight rate, contains the words "all other conditions as per charter party." Earnshaw v. McHose, 56 Fed. Rep. 606, distinguished.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

At Law. Action by the Pottsville Iron & Steel Company against Edward Ascherson and others for recovery of money. A verdict was directed for defendants, and from the judgment entered thereon plaintiff brings error. Affirmed.

A. H. Wintersteen and Wayne MacVeagh, for plaintiff in error.
Samuel Dickson and John G. Johnson, for defendants in error.

Before ACHESON, Circuit Judge, and BUTLER, District Judge.

ACHESON, Circuit Judge. This action was brought to recover the sum of $5,881.41, alleged to have been wrongfully retained by the defendants from the plaintiff in settlements for foreign iron ore bought by the plaintiff from the defendants, deliverable at Philadelphia. By the terms of the written contract between the parties, dated December 3, 1885, the defendants agreed to sell to the plaintiff about 9,000 tons of ore, at a stipulated price; but this was qualified by the following distinct clause:

"Price based on freight of nine shillings per ton, buyers receiving or paying differences between that and the rate specified in bill of lading."

The sum sued for is the amount of dispatch money allowed by the terms of the several charter parties for quick dispatch in loading and unloading the carrying vessels, which the defendants had taken and retained in good faith. The circuit court excluded the evidence offered by the plaintiff to show the amount of dispatch money so received by the defendants, and directed a verdict in their favor. The judge below was of the opinion that this case is distinguishable from that of Earnshaw v. McHose, 56 Fed. Rep. 606, in which this court held that the buyer was entitled to have the dispatch money accounted for. There the clause of the contract of sale upon which the question arose was in these words:

"The above prices are based on an ocean freight rate of twelve shillings per ton; all freight over twelve shillings to be added to the invoice as part of the price of the ore, and all freight under twelve shillings to be deducted from the invoice."

The difference in the language of the two quoted clauses justifies, we think, the distinction which the circuit court made. The court read the clause here in question according to its natural meaning. Certainly, on their face, the words "the rate specified in bill of lading," in the connection in which they stand, import that the rate of freight mentioned in the bill of lading shall be controlling. That was the agreed basis of settlement. It must be presumed that the parties deliberately chose these words as the expression of their intention, and we are not at liberty to disregard or modify

them. No bad faith, it will be noticed, is imputed to the defendants. It is not pretended that the rates of freight specified in the bills of lading were unfair.

It is, indeed, earnestly contended on behalf of the plaintiff in error that, because each bill of lading refers to a charter party, the two instruments are thereby so connected that for the purposes of this case all distinction between them is obliterated. Quoting from one of the bills of lading, as a sample of all, we find this language, (referring to the consignees, the defendants:)

"He or they paying freight for the said goods ten shillings and six pence per ton of 1,015 kilos delivered, and all other conditions as per charter party, dated London, 31 December, 1885."

The argument based on this phraseology is not convincing. We do not see that the words "the rate specified in bill of lading" must mean the rate of freight indicated by both the bill of lading and the charter party, taken together. The two papers, while closely related, are yet distinct instruments. This the parties here have plainly recognized.

It is to be observed that we are dealing with a question of the construction of a clause of the contract of sale. What did the parties mean by the language they have seen fit to employ? They have particularized the bill of lading, and expressly made the freight rate specified therein one of the terms of their contract. It is to be assumed that they had a purpose in so doing. If they had intended to contract with reference to the rate specified in the bill of lading as it might ultimately be affected by the allowance of dispatch money under the provisions of the charter party, presumably they would have used language different from that which they adopted.

The judgment of the court below is affirmed.